IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) Criminal No.: 3:18-cr-00199-JMC-1 |
| v. | ) **ORDER AND OPINION** |
| Shontavis Davis, | ) |
| Defendant. | ) |

Defendant Shontavis Davis is a prisoner currently serving a sentence of 180 months in the Bureau of Prisons ("BOP"). (ECF No. 81.) This matter is before the court pursuant to Defendant's Motion for Compassionate Release. (ECF No. 87.) For the reasons set forth below, the court **DENIES** Defendant's Motion for Compassionate Release. (*Id.*)

## I.   RELEVANT BACKGROUND

On February 21, 2018, the Grandy Jury named Defendant in a three (3) count Indictment for the following offenses committed on or about January 31, 2018, in the District of South Carolina: (1) felon in possession of a firearm; (2) possession with the intent to distribute a quantity of marijuana; and (3) possession of a firearm in furtherance of a drug trafficking crime. (ECF Nos. 13, 14.)

On February 1, 2019, Defendant pleaded guilty to count one of the Indictment pursuant to a written plea agreement. (ECF Nos. 55, 57.) On October 16, 2019, Defendant was sentenced to 180 months of imprisonment. (ECF No. 81.) Defendant is currently serving his term of imprisonment at Schuylkill Federal Correctional Institution ("FCI Schuylkill"). (ECF No. 87.)

On March 11, 2020, the World Health Organization ("WHO") declared the outbreak of coronavirus 2 (SARS-CoV-2) as a global pandemic, *WHO*, https://www.who.int/director-general

/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited July 9, 2021).  As of July 9, 2021, there are approximately 33.8 million reported cases in the United States and approximately 185.7 million reported cases of COVID-19 worldwide, resulting in more than 4 million deaths.  *Coronavirus Resource Center Global Map,* https://coronavirus.jhu.edu/map.html (last visited July 9, 2021).  As of July 9, 2021, "[t]here are 21 federal inmates and 132 BOP staff who have confirmed positive test results for COVID-19 nationwide."  *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited July 9, 2021).  At FCI Schuylkill where Defendant is housed, there are no active cases of COVID-19.  (*Id.*)

On December 28, 2020, Defendant filed the instant *pro se* Motion for Compassionate Release pursuant to 18 USC § 3582(c)(1)(A)(i).  (ECF No. 87.)  Defendant contends that his underlying asthma problems and the presence of COVID-19 in the facility where he is housed warrant his compassionate release.  (*Id.* at 9.)  Defendant further contends that he would not be able to render self-care if he were to contract COVID-19.  (*Id.*)

## II.     LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 USC § 3582(c).  One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary and compelling circumstances.   "As amended by the First Step Act, 18 USC § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (ED. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id.*; *see also United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021).

"Extraordinary and Compelling Reason[s]" for release are—in part—defined in application notes (1)(A-D) of U.S.S.G. § 1B1.13. These reasons include whether (A) defendant suffers from a terminal illness, serious medical condition, serious functional or cognitive impairment, or deteriorating mental or physical health due to age which renders them unable to provide self-care; (B) defendant is a defined age or has served a defined percentage of their sentence; (C) certain family circumstances compel the court; or (D) there exists some "other" extraordinary and compelling reason. *See id*. The policy statement further provides that, "[p]ursuant to 28 USC § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." U.S.S.G. § 1B1.13 cmt. n.3.

As the plain language of § 1B1.13 applies only to motions brought by the BOP on the defendant's behalf, it is not applicable to motions for compassionate release brought by the defendant on their own behalf. *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020). While the policy statements "remain helpful guidance" in evaluating Defendant's own motions, courts retain the discretion to make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A). *Id*; *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020).

After discerning whether extraordinary and compelling reasons exist, the court considers §

3553(a)'s sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the sentencing range established per the applicable guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553.

Finally, the court may consider whether a person presents a "danger to the safety of any other person or the community" under the balance of four factors: (1) the nature and circumstances of the offense, with attention to the instant crime's level of violence or involvement with a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed to any person or the community upon the defendant's release. 18 U.S.C. § 3142(g).

### III.     ANALYSIS

Defendant moves the court to grant him compassionate release due to his underlying medical condition and the presence of COVID-19 in the facility where he is housed. (ECF No. 87 at 9.) Upon its review, the court observes that Defendant did not exhaust his administrative remedies and his present circumstances do not warrant his compassionate release.

Defendant contends in his Motion that he has fully exhausted his administrative remedies because he filed a request for release with the BOP on December 11, 2020. (ECF No. 87 at 1.) Although Defendant filed the instant Motion for Compassionate Release on December 28, 2020, he signed the Motion on December 11, 2020, which is the same day that he filed the request for release with the warden. (*Id.* at 11.) Because the Defendant did not file a request for release with the BOP thirty (30) days before filing his Motion for Compassionate Release, Defendant did not

4

sufficiently exhaust his administrative remedies.

When exceptional circumstances exist, courts have waived administrative exhaustion requirements because enforcing them would prove futile. *Feiling*, 453 F. Supp. 3d at 837. For example, in *United States v. Perez,* the court held that administrative exhaustion would be futile for a defendant who had twenty-three (23) days remaining on his sentence and was in fragile health. *United States v Perez,* 451 F. Supp. 3d 288, 292–93 (S.D.N.Y. 2020). The circumstances in Defendant's case are much different than the circumstances that warranted a waiver in the case above. Firstly, Defendant is in good physical health and does not take any medication for his underlying health condition. (ECF No. 80 at 18.) Secondly, Defendant has only served about forty (40) percent of his sentence to date, which would provide him with an opportunity to properly exhaust his administrative remedies. *See Inmate Locator,* https://www.bop.gov/inmateloc/ (last visited July 9, 2021) (search by BOP Register Number 33208-171). Therefore, Defendant's present circumstances would not merit waiver of the exhaustion requirement.

Even if the court waived the exhaustion requirement, Defendant fails to prove that there are extraordinary and compelling reasons that warrant his compassionate release. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d 832 at 841. "Notably, 'the fear of contracting a communicable disease' proves insufficient to justify a sentence modification." *Id.* (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020)).

Defendant has not shown a particularized susceptibility to COVID-19. Defendant contends that his underlying asthma problems make him susceptible to COVID-19 and he would be unable

to render self-care if he contracted the virus. (ECF No. 87 at 3.) The Centers for Disease Control ("CDC") has released guidance about what medical conditions render people more susceptible to COVID-19. The court acknowledges that according to CDC guidelines, people with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19. *People with Asthma*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited July 8, 2021). However, Defendant has not provided any proof that he has moderate-to-severe or uncontrolled asthma. Moreover, Defendant previously reported that he was in good physical health and did not take any medication for his asthma. (ECF No. 80 at 18 ¶ 69.)

Even if Defendant's medical condition makes him particularly vulnerable to COVID-19, he has failed to show that he has a particularized risk of contracting the virus at FCI Schuylkill. Since the pandemic began, 516 inmates at FCI Schuylkill have contracted COVID-19. *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited July 9, 2021). FCI Schuylkill has not had any inmate or staff deaths due to COVID-19 and there are currently no active COVID-19 cases amongst inmates or staff. *Id.* Based on the current conditions at FCI Schuylkill, the court is not persuaded that Defendant would be safer at home in Lexington, South Carolina where there have been 26,326 confirmed positive cases and 437 deaths. *COVID-19 Testing Data & Projections*, https://scdhec.gov/covid19/sc-testing-data-projections-covid-19 (last visited July 9, 2021).

Because Defendant cannot demonstrate exhaustion of his administrative remedies or "extraordinary and compelling reasons" for his release, the court **DENIES** his Motion for Compassionate Release. (ECF No. 87.)

## IV.    CONCLUSION

After a thorough review, the court **DENIES** Defendant's Motion for Compassionate Release. (ECF No. 87.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 19, 2021
Columbia, South Carolina